IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| REGINA Y. CYPHERS, | § § § | |
| *Plaintiff,* | § § § | SA-22-CV-00357-JKP |
| vs. | § § § | |
| CAMINO REAL COMMUNITY SERVICES, EMMA GARCIA, EXECUTIVE DIRECTOR, CAMINO REAL COMMUNITY SERVICES; AND VERONICA SANCHEZ, DEPUTY EXECUTIVE DIRECTOR, CAMINO REAL COMMUNITY SERVICES, | § § § § § § § § § § | |
| *Defendants.* | § | |

**ORDER**

Before the Court in the above-styled cause of action is Defendants' Motion to Compel Arbitration [#8]. By their motion, Defendants ask the Court to compel the parties to arbitrate their dispute pursuant to an arbitration agreement executed by Plaintiff at the outset of her employment with Defendant Camino Real Community Services. Plaintiff, who is proceeding *pro se*, and counsel for Defendants appeared before the Court at an initial pretrial conference on August 23, 2022, at which the Court heard argument on Defendants' motion to compel arbitration. For the reasons that follow, the Court will grant the motion to compel arbitration, stay this case pending the issuance of a final arbitral award, order Defendants to provide Plaintiff with a copy of the governing rules for the arbitration, and order Defendants to file quarterly status updates as to the arbitration's progress.

**I. Background**

By this action, Plaintiff Regina Y. Cyphers claims that her former employer, Defendant Camino Real Community Services ("CRCS"), subjected her to race and age discrimination in

1

violation of Title VII of the Civil Rights Act of 1964 and the Age Discrimination in Employment Act when it terminated her employment and denied her the opportunity for promotions within the organization. Defendants contend that Plaintiff agreed to arbitrate all of her claims against Defendants when she signed an arbitration agreement as part of the at-will employment agreement she executed at the outset of her employment on May 12, 2015. The arbitration agreement attached to Defendants' motion states as follows:

> 3.1   Any controversy between Employee and CRCS or any of its constituent . . . officers . . . arising from or in any way related to Employee's employment by CRCS, or the termination thereof, including but not limited to the construction or application of this Agreement, that might otherwise form the basis of litigation, shall be resolved exclusively by final and binding arbitration administered by the American Arbitration Association ("AAA") under its Employment Rules then applicable to the dispute. It is the intent of the parties hereto that all disputes between them must be arbitrated expressly including, but not limited to, any dispute about the interpretation validity or enforcement of this Agreement, [and] any claim of employment discrimination, such as, but not limited to discrimination based on age, disability, national origin, race, or sex, . . . or any other claim, whether contractual, common-law, or statutory, arising out of, or in any way related to, Employee's Agreement and employment with CRCS, the termination thereof, or any other matter incident thereto.

(Arbitration Agreement [#8], at 10–11.)

The Fifth Circuit has established a two-step inquiry in determining whether the parties have agreed to arbitrate a claim. "The first is contract formation—whether the parties entered into *any arbitration agreement at all*. The second involves contract interpretation to determine whether *this* claim is covered by the arbitration agreement." *Kubala v. Supreme Prod. Servs., Inc.*, 830 F.3d 199, 201 (5th Cir. 2016) (emphasis in original). In the absence of a valid clause delegating the threshold issue of arbitrability to the arbitrator, both steps are questions for the Court. *Id.* However, where the parties' contract delegates the question of arbitrability to the arbitrator, a court possesses no authority to decide whether the parties' dispute falls within the

scope of the agreement. *Henry Schein, Inc. v. Archer & White Sales, Inc.*, ---U.S.---, 139 S. Ct. 524, 529 (2019).

Although there is a strong presumption favoring arbitration, the presumption arises only after the party seeking to compel arbitration proves that a valid arbitration agreement exists. *TRC Envtl. Corp. v. LVI Facility Servs., Inc.*, 612 Fed. App'x 759, 762 (5th Cir. 2015). Hence, the party moving to compel arbitration bears the initial burden of proving the existence of a valid agreement to arbitrate. *See Huckaba v. Ref-Chem, L.P.*, 892 F.3d 686, 688 (5th Cir. 2018). Once the moving party has met its initial burden, the burden shifts to the party resisting arbitration to assert a reason that the arbitration agreement is unenforceable. *Carter v. Countrywide Credit Indus., Inc.*, 362 F.3d 294, 297 (5th Cir. 2004) (citing *Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 24 (1991)).

Plaintiff's response does not dispute that she signed the arbitration agreement produced by Defendants when CRCS hired her as a part-time "contract employee" in 2015. However, Plaintiff argues that this agreement is outdated or no longer in effect because she applied for and was hired for a full-time position with CRCS in February 2016. According to Plaintiff, Defendants must produce the new arbitration agreement, if any, that would have been signed as part of the onboarding process for the full-time position in order to compel her to arbitration. Plaintiff also contends that the arbitration agreement is unconscionable because the rules governing arbitration arbitrarily and significantly limit her opportunity for discovery; arbitration will increase her costs and burdens; the agreement does not clearly explain how she would invoke arbitration; and Plaintiff was not given a copy of the arbitration agreement at the time of its execution or at the time of her termination. Finally, Plaintiff argues Defendants waived their

right to invoke the arbitration clause in her employment agreement because they waited years after her termination to make an arbitration demand.

As the Court explained to Plaintiff at the conference, none of these arguments is a basis for invalidating the arbitration agreement.  First, Plaintiff does not argue that she was terminated in 2015 and then re-hired in 2016 when she began her full-time employment.  Rather, she merely transitioned within CRCS from a part-time, hourly position to a full-time position.  The arbitration agreement makes plain that it applies to any controversy "in any way related to Employee's employment by CRCS."  (Arbitration Agreement [#8], at 10.)  The Court finds that the arbitration agreement was executed by Plaintiff at the outset of her employment with CRCS in 2015 and continued to govern the parties' relationship throughout her employment relationship with the company, irrespective of any promotion or change in position.

Second, the Court does not find any aspect of the contract to be unconscionable.  "[A]s a matter of federal law, arbitration agreements and clauses are to be enforced *unless* they are invalid under principles of state law that govern all contracts."  *Iberia Credit Bureau, Inc. v. Cingular Wireless LLC*, 379 F.3d 159, 166 (5th Cir. 2004) (emphasis in original). Thus, "generally applicable contract defenses, such as fraud, duress, or unconscionability, may be applied to invalidate arbitration agreements without contravening [the Federal Arbitration Act]." *Doctor's Assocs., Inc. v. Casarotto*, 517 U.S. 681, 686–87 (1996) (citing 9 U.S.C. § 2)).  An arbitration agreement may be substantively unconscionable under Texas law and therefore unenforceable if "given the parties' general commercial background and the commercial needs of the particular trade or case, the clause involved is so one-sided that it is unconscionable under the circumstances existing when the parties made the contract." *In re Poly–America, L.P.*, 262 S.W.3d 337, 348 (Tex. 2008).

There is nothing *per se* unconscionable about limiting written discovery (here 15 requests for production and subpoenas for documents from third parties) and limiting the number of depositions (here two for each party).  *Id.*  These limitations are aimed at allowing for a more efficient resolution of the parties' dispute and apply equally to both sides.  Moreover, the arbitrator, not this Court, is in the best position to determine whether particular discovery limitations impede the effective prosecution of a specific case.  *In re Houston Pipe Line Co.*, 311 S.W.3d 449, 451 n.3 (Tex. 2009).  Nor is the agreement unconscionable because Plaintiff did not receive a copy of the arbitration agreement at signing.  *See In re Raymond James & Assocs.*, 196 S.W.3d 311, 320 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (finding account holders bound by arbitration provisions in client agreement even though they never received a copy).

Finally, Defendants did not waive their right to compel Plaintiff's claims to arbitration by waiting until she filed this federal lawsuit to file their motion to compel arbitration.  There is a strong federal policy in favor of arbitration, and courts only find waiver where the party seeking arbitration "substantially invokes the judicial process to the detriment of the other party."  *Frye v. Paine, Webber, Jackson & Curtis, Inc.*, 877 F.2d 396, 398 (5th Cir. 1989) (internal quotation and citation omitted).  Defendants promptly filed their motion to compel arbitration on the same day they filed their Original Answer to Plaintiff's Complaint, after receiving notice of Plaintiff's federal lawsuit.  There was no delay in their demand for arbitration.  At the conference before the Court, Plaintiff expressed her frustration that Defendants did not initiate an arbitration sooner.  Yet, because Plaintiff is the one asserting causes of action against Defendants—not the other way around—Defendants would not request arbitration be compelled until Plaintiff filed suit in court rather than with the American Arbitration Association.  (The EEOC charge process is a separate and distinct step and cannot be compelled to arbitration.)

In summary, the Court finds that the parties executed a valid and enforceable agreement to arbitrate. The Court further finds that any argument as to whether the specific race and age discrimination claims Plaintiff asserts in her Complaint are covered by the arbitration agreement is for the arbitrator to decide. *See Henry Schein, Inc.*, 139 S. Ct. at 529. The arbitration agreement specifically delegates any dispute about the interpretation, validity, or enforcement of the arbitration agreement to be arbitrated. (Arbitration Agreement [#8], at 11.) The Court will therefore compel Plaintiff's claims against Defendants to arbitration.

**IT IS THEREFORE ORDERED** that Defendants' Motion to Compel Arbitration [#8] is **GRANTED**.

**IT IS FURTHER ORDERED** that all of Plaintiff's claims against Defendants are hereby **COMPELLED** to arbitration.

**IT IS FURTHER ORDERED** that Plaintiff's claims against Defendants are hereby **STAYED** pending the completion of the arbitration.

**IT IS FURTHER ORDERED** that Defendants file a quarterly advisory regarding the status of the arbitration, with the first advisory due on **November 21, 2022**.

**IT IS FINALLY ORDERED** that Defendants provide Plaintiff with a copy of the rules American Arbitration Association's Employment Rules governing the ordered arbitration on or before **August 26, 2022**.

SIGNED this 24th day of August, 2022.

ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE

6